UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Alfred Cotton and Rubbie Cotton, ) | |
| ) | Case No.: 2:13-cv-6270 |
| Plaintiffs, ) | |
| ) | Section: |
| vs. ) | |
| ) | **JURY TRIAL DEMANDED** |
| Scottsdale Insurance Company, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

**NOW INTO COURT**, through undersigned counsel, come plaintiffs, Alfred Cotton and Rubbie Cotton, (hereinafter referred to as "Plaintiffs" or "Cottons"), persons of full age and majority and domiciled in the Parish of St. John the Baptist, State of Louisiana, and respectfully represents:

1.      The jurisdiction of this court is invoked under 28 U.S.C. Section 1332, commonly known as the diversity of citizenship, as the parties are diverse, and the controversy exceeds SEVENTY-FIVE THOUSAND AND NO/100 ($75,000.00) DOLLARS.  The jurisdiction of this court is also invoked under 42 U.S.C. Section 4053.

2.      Made Defendant herein is SCOTTSDALE INSURANCE COMPANY (hereinafter referred to as "Scottsdale"), a foreign insurance company, authorized to do and doing business in the Parish of St. John the Baptist, State of Louisiana.  At all pertinent times herein, Scottsdale provided windstorm coverage to the Cottons for the properties located at addresses 501, 505, 509, 532, and 536 Fife Lane; as well as addresses 2413 and 2425 Virginian Colony, La Place, Louisiana 70068 (also referred to herein as the "Cottons' Property").

**WINDSTORM INSURANCE CLAIM**

3. Plaintiffs hereby incorporate paragraphs 1 through 2 above by reference as if fully set forth herein.

4. At all times relevant to this action, the Cottons were insured policy holders under a certain policy of windstorm insurance issued and/or underwritten by Scottsdale.

5. Plaintiffs further allege that, under the terms and provisions of the said insurance policy, further identified as Policy No. DPS1018563 (the "Windstorm Policy"), the Plaintiffs became entitled to coverage against certain perils associated with storms, including but not limited to hurricanes, in the event that the buildings, structures, and contents owned by the Plaintiffs, located at addresses 501, 505, 509, 532, and 536 Fife Lane; as well as addresses 2413 and 2425 Virginian Colony, La Place, Louisiana 70068, should become damaged or rendered a total loss as a result of impact or injury suffered as a result of such insured perils.

6. Plaintiffs further allege that, at all times relative to this complaint, the said Windstorm Policy of insurance was in full force and effect, the annual premium having been paid in full.

7. On the morning of August 28, 2012, Hurricane Isaac approached the Gulf Coast bringing with it extremely destructive winds which were documented to be most intense along the eastern sides of the storm. The storm first made landfall in southeast Louisiana near the mouth of the Mississippi River at approximately 6:00 PM (0000 UTC), before shifting slightly west for a second landfall on the 29th near Port Fourchon, Louisiana at approximately 2:00 AM (0800 UTC). The sustained winds and peak wind gusts recorded by the National Weather Service in the areas closest to the Cottons' properties were 66 knots (76 miles per hour) and 84 knots (97 miles per hour) respectively. Moreover, the storm spawned 17 documented tornados in

Mississippi, Alabama, Florida and Illinois.  Plaintiffs allege that their buildings, structures, and contents were substantially damaged and devastated as a result of the winds and wind driven debris associated with Hurricane Isaac which tore through the insured property.

8.      Within days after Hurricane Isaac made its landfall, Plaintiffs registered a claim with Scottsdale for the windstorm loss as a result of the damage to their buildings, structures, and contents.  There ensued thereafter a period of supposed analysis and adjustment of the windstorm claims of the Plaintiffs.  Scottsdale acknowledged its responsibility to pay to the Plaintiffs a sum of money to compensate them for their losses sustained as a result of wind related damage associated with the storm and which were compensable under the Windstorm Policy.  Ultimately, Scottsdale made a partial payment of the claim.  Scottsdale has thus recognized its responsibility to make payments under the policy and the formula by which those payments are to be calculated.  However, the claims of the Plaintiffs have been underpaid due to the fact that Scottsdale has acted in bad faith and improperly adjusted the damages to the subject buildings, structures, and contents while simultaneously both under-evaluating the costs to repair the buildings and structures and under-evaluating the effects of the wind on the structures in causing the damages suffered by Plaintiffs.

9.      An appropriate Proof of Loss has been presented to Scottsdale in accordance with the terms and provisions of the Windstorm Policy.

10.     Scottsdale has failed and refused to honor the terms and provisions of the subject contract of insurance, and in doing so, has breached the subject contract of insurance.

11.     Scottsdale delayed, denied and refused full payment of the claim within sixty (60) days of receipt of Proof of Loss, and that delay, denial and refusal was arbitrary, capricious and without probable cause.

12. As a proximate consequence of the above described breach of contract by Scottsdale, the Plaintiffs have suffered damages in that the claims for full, fair, and just compensation to the full extent of their actual losses have not been paid.  Scottsdale has failed and refused to make additional payments, even though the Plaintiffs have afforded Scottsdale ample opportunity to reassess and reevaluate its position.

13. Scottsdale has acted in bad faith when it arbitrarily, capriciously and without probable cause refused to pay the Cottons for the damages to their properties and contents, and therefore, as a result, the Cottons are entitled to penalties, damages, and attorneys' fees pursuant to LSA-R.S. 22:1973 and LSA-R.S. 22:1892, et seq. as promulgated by the Louisiana State Legislature.

## COUNT I
## DECLARATORY RELIEF – WIND

14. Plaintiffs reallege and incorporate herein the allegations set forth in paragraphs 1 through 13.

15. The Windstorm Policy insures against direct physical loss of or damage to covered property resulting from windstorm, unless otherwise excluded.  None of the exclusions in the Windstorm Policy apply to preclude coverage for the wind-related damages submitted for coverage under the Windstorm Policy.

16. Pursuant to the terms of the Windstorm Policy, coverage is provided for the wind-related damages that are included in Plaintiffs' Proof of Loss, however, Scottsdale has refused to pay Plaintiffs for the full amount of wind-related losses submitted as a part of the Proof of Loss, and, therefore, there presently exists an actual controversy between Plaintiffs and Scottsdale concerning whether Plaintiffs' loss is covered to the full extent of the Proof of Loss submitted.

17. Plaintiffs seek a declaration that Scottsdale is obligated to pay their claim loss and damages up to the full extent of the submitted Proof of Loss, less any applicable deductible amount.

## COUNT II
## BREACH OF CONTRACT – WIND

18. Plaintiffs reallege and incorporate herein the allegations set forth in paragraphs 1 through 17 herein.

19. Pursuant to the terms and conditions of the aforementioned Windstorm Policy, Scottsdale is obligated to pay Plaintiffs for their Hurricane Isaac loss up to the full extent of their submitted Proof of Loss for wind-related damages, minus any applicable deductible amount.

20. Plaintiffs provided timely notice of their loss to Scottsdale, which has, contrary to the terms of its policy, refused to pay for all wind-related damages, which are within the limits of the available coverage. As a result of Scottsdale's breach of the Windstorm Policy, Plaintiffs have and will incur substantial costs that they would not otherwise have had to incur.

21. By reason of the foregoing, Scottsdale is liable to Plaintiffs for breach of contract and damages, the exact amount to be proven at trial, including, but not limited to, the amount of Plaintiffs' loss and damages covered under the Windstorm Policy above any applicable deductible, together with attorneys' fees, costs, penalties and disbursements under applicable law that have been incurred to date and which may be incurred by Plaintiffs in connection with prosecution of this lawsuit to recover insurance.

**COUNT III**
**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING – WIND**

22. Plaintiffs reallege and incorporate herein the allegations set forth in paragraphs 1 through 21.

23. In selling the Windstorm Policy to Plaintiffs and collecting substantial premiums from such coverage, Scottsdale assumed a duty of good faith and fair dealing towards Plaintiffs. Scottsdale is required to give the same consideration to Plaintiffs' interests as it affords its own interests. The Windstorm Policy includes an implied promise that Scottsdale would deal fairly and in good faith with Plaintiffs and would do nothing to injure, frustrate or interfere with Plaintiffs' rights to receive the benefits of the Windstorm Policy.

24. Scottsdale has breached its duty of good faith and fair dealings to Plaintiffs as hereinabove set forth in one or more of the following respects by:

    a. unjustified and unreasonable withholding of benefits due under the Windstorm Policy. Scottsdale does not have a good faith basis to deny coverage for Plaintiffs' wind-related damages as set forth in their Proof of Loss. As a result of Scottsdale's refusal to pay the Proof of Loss amount, Scottsdale not only is delaying claims adjustment and payment for Plaintiffs' damage, but it is also unreasonably compelling Plaintiffs to expend resources in coverage litigation;

    b. willfully and in breach of its duty of good faith, interpreting the factual circumstances and claim submission to resolve against Plaintiffs and in favor of its own interests;

    c. denying Plaintiffs insurance coverage on the basis of the size and kind of claim or other external considerations, rather than on the particular facts of Plaintiffs' claim;

    d. compelling Plaintiffs to initiate this case to obtain insurance coverage to which Plaintiffs are entitled under the Windstorm Policy.

25. Louisiana's statute on unfair trade practices, LSA-R.S. 22:1973 prohibits unfair claims settlement practices in the business of insurance and provides that "[a]n insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach." LSA-R.S. 22:1973 (A). An insurer's actions in "[m]isrepresenting pertinent facts or insurance policy provisions relating to any coverage at issue," "[f]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause," and "[f]ailing to pay claims pursuant to R.S. 22:1893 when such failure is arbitrary, capricious, or without probable cause," are included in the statutorily defined acts constituting a breach of the duty of good faith and fair dealing. LSA-R.S. 22:1973(B)(1, 5, 6).

26. Scottsdale's actions, as set forth above, are without any reasonable justification, were undertaken in bad faith, and constitute a breach of Scottsdale's duty of good faith and fair dealing.

27. As a direct and proximate result of Scottsdale's bad faith acts, Plaintiffs have sustained and will sustain actual damages, including, but not limited to, legal fees and costs.

28. Scottsdale's conduct is willful, intentional and malicious, and demonstrates a gross and reckless disregard for the interests of Plaintiffs as their insureds and renders Scottsdale liable to Plaintiffs for exemplary damages.

WHEREFORE, the Plaintiffs, Alfred Cotton and Rubbie Cotton, demand judgment against Scottsdale as follows:

A.	That the Court determine and declare that Scottsdale must pay Plaintiffs for their wind-related damages as set forth in their Proof of Loss, less the applicable deductible;

B.	That Scottsdale be held contractually obligated to pay Plaintiffs the amount of damages sustained for their wind-related loss above the applicable deductible;

C.	That Plaintiffs have and recover damages related to Scottsdale's breaches of the duty of good faith and fair dealing, the exact amount to be proven at trial, including exemplary damages and legal fees and costs and interest; and

D.	That Plaintiffs have and recover pre-judgment and post-judgment interest, attorneys' fees, costs, penalties and disbursements incurred in this action under applicable law, together with such other and further relief as the Court may deem just and proper.

Date: October 28, 2013		Respectfully submitted,

			**THE KRELLER LAW FIRM**


			/s/ *Stephen Skelly Kreller*_____
			Stephen Skelly Kreller (Bar No. 28440)
			757 St. Charles Avenue, Suite 301
			New Orleans, Louisiana 70130
			T: (504) 484-3488
			F: (888) 294-6091
			E: ssk@krellerlaw.com

			**FAEGRE BAKER DANIELS LLP**
			Rikke Dierssen-Morice (pro hac vice motion pending)
			2200 Wells Fargo Center
			90 South Seventh Street
			Minneapolis, Minnesota 55402
			T: (612) 766-7000
			F: (612) 766-1600
			***Attorneys for Plaintiffs, Alfred Cotton and Rubbie Cotton***

**Please serve defendant as follows:**

Scottsdale Insurance Company
Through its registered agent for service of process:
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809

dms.us.53030494.01