```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF LOUISIANA
```

**ALFRED COTTON, ET AL.**                         **CIVIL ACTION**

**VERSUS**                                        **NO. 13-6270**

**SCOTTSDALE INSURANCE COMPANY,**                 **SECTION "B" (2)**
**AND CERTAIN UNDERWRITERS AT**
**LLOYD'S OF LONDON**

<u>**ORDER AND REASONS**</u>

### I.   <u>NATURE OF THE MOTION AND RELIEF SOUGHT</u>

Before the Court are Defendant, Certain Underwriters at Lloyd's, London's Fed. R. Civ. P. 56 *Motion for Summary Judgment of Claims of First American Bank*,[1] and *Motion for Summary Judgment of Cotton Claims*.[2] Plaintiffs, Alfred and Rubbie Cotton ("Cottons") have filed a response in opposition.[3] Plaintiff, First American Bank and Trust ("First American Bank") has filed a response in opposition. The motions, set for submission on July 30, 2015, are before the Court without oral argument.

Accordingly, and for the reasons enumerated below, **IT IS ORDERED** that the Motion for Summary Judgment as to First American Bank and Trust's claims (Rec. Doc. No. 121) is **DENIED**, and the Motion for Summary Judgment as to the Cottons' claims (Rec. Doc. No. 122) is **GRANTED**.

---

[1] Rec. Doc. No. 121.
[2] Rec. Doc. No. 122.
[3] Rec. Doc. No. 124, 125, 126, 127, 128, 129.

II.     **FACTS AND PROCEDURAL HISTORY**

Plaintiffs, Alfred and Rubbie Cotton ("Plaintiffs" or "Cottons") filed suit seeking to recover for alleged flood and wind damage to their seven (7) rental properties located in LaPlace, Louisiana, sustained on August 28, 2012 as a result of Hurricane Isaac.[4] On October 28, 2013, Plaintiffs filed their Original Complaint, invoking jurisdiction under 42 U.S.C. § 1332, and asserting claims for declaratory relief, breach of contract, and breach of good faith and fair dealing, and naming as Defendants their windstorm insurance coverage provider, Scottsdale Insurance Company.[5]

On December 30, 2013, Plaintiffs filed an amended complaint, joining Defendant Underwriters, asserting claims for declaratory judgment and breach of contract, and invoking jurisdiction under 28 U.S.C. § 1331 (Federal Question), and 42 U.S.C. § 4053. Section 4053 provides that flood insurance policyholders may sue their insurers in federal court in regard to disputes arising from the policies. The federal courts premise their jurisdiction under the National Flood Insurance Act ("NFIA") upon the fact that policies under the National Flood Insurance Program ("NFIP") are paid from the federal treasury. *See Landry v. State Farm Fire & Cas. Co.*, 428 F.Supp. 2d 531, 533 (E.D. La. 2006).

---

[4] Rec. Doc. No. 55, Second Amended Complaint.
[5] Rec. Doc. No. 1. On March 20, 2015, the Court granted a "Joint Motion to Dismiss Claims against Scottsdale Insurance Company with Prejudice." Rec. Doc. No. 86. Specifically, the Cottons and Scottsdale moved to dismiss the Cottons claims against Scottsdale, with prejudice. Rec. Doc. No. 85.

2

Underwriters at Lloyd's, London ("Underwriters") are members of Syndicate 1414, which severally subscribed to a flood mortgage security policy in favor of First American Bank & Trust ("First American").[6] Plaintiffs base their claims against Underwriters under a force-placed and/or lender-placed policy, identified with Master Policy No. PG1200564790005 ("Flood Policy"), and purportedly issued through the NFIP. The Policy was issued because the Cottons, as mortgagors of the Properties at issue, failed to secure flood insurance for the Properties. In turn, the Cottons' mortgage holder, First American, secured coverage to protect its financial interests in the Properties.

On October 27, 2014, this matter was administratively closed by the Court upon a *Joint Motion to Continue Trial*, informing of outstanding discovery that could result in mediation.[7] The Court granted Underwriters' *Motion to Lift Administrative Closure* on January 12, 1015.[8] Underwriters promptly moved to dismiss the litigation for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1), on the basis that there existed no legal relationship between Plaintiffs and Underwriters by which Plaintiffs could assert a cause of action.[9] The Magistrate Judge granted Plaintiffs leave to file a second amended complaint, which joined First American Bank as a

---

[6] Rec. Doc. No. 55 at 9.
[7] Rec. Doc. No. 40.
[8] Rec. Doc. No. 42.
[9] Rec. Doc. No. 43.

Plaintiff to this action.[10] This Court subsequently dismissed Underwriters' Fed. R. Civ. P. 12(b)(1) motion as moot, considering the amended complaint added the undisputed insurance policy holder, First American, asserting its legal rights and interests thereunder.

The Policy at issue is not a Standard Flood Insurance Policy ("SFIP") issued pursuant to federal law, thus it became clear that subject matter jurisdiction predicated on 42 U.S.C. § 4053 was untenable. On July 29, 2015, the Court *sua sponte* raised the issue of subject matter jurisdiction, ordering the Parties to submit briefs on: (1) the basis for the Court's exercise of jurisdiction over the claims asserted, (2) the law governing resolution of those claims, and (3) requiring Plaintiffs to submit notarized waivers of relief and/or remedies from, any federally administered or funded programs. Plaintiffs have filed notarized waivers stating they are "not seeking relief or payment from any federally administered or funded programs and further...not to seek enforcement against federal agencies, programs...."[11] The Parties both submit that the Policy is governed by the Louisiana Civil Code. Plaintiffs concede the Court does not have federal question jurisdiction under the statute; however, contend the Court retains jurisdiction on

---

[10] Rec. Docs. No. 54, 55.
[11] Rec. Doc. No. 1441-1 at 2; Rec. Doc. No. 1441-2 at 2.

4

diversity grounds pursuant to 42 U.S.C. § 1332 because there is complete diversity of citizenship among the parties, and Plaintiffs seek more than $75,000.00 in damages.[12] Thus, the Court addresses the merits of Defendant's motions for summary judgment.

### III. LAW AND ANALYSIS

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 749 (5th Cir. 2002). The proponent of the motion bears the burden of showing a lack of evidence to support his opponent's case. Fed. R. Civ. P. 56(c); *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014).

A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R. Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). A party cannot "defeat summary judgment with conclusory allegations, unsubstantial assertions, or 'only a scintilla of evidence.'"

---

[12] The Cottons and First American Bank are citizens of Louisiana. Underwriters is a citizen of a foreign state, the United Kingdom.

*Celtic Marine Corp. v. James C. Justice Companies, Inc.*, 760 F.3d 477, 481 (5th Cir. 2014); *TIG Ins. Co.*, 276 F.3d at 759.

    A. *Underwriters' Motion for Summary Judgment as to First American Bank & Trust's Claims*

Underwriters contends that prompt payment was made upon timely submitted proof of loss claims and further, that First American Bank did not comply with the requirements of their insurance policy to submit any additional claim(s) under their policy, and therefore, should be barred from pursuing such additional claims in this litigation.[13] Underwriters paid approximately $218,000 to First American Bank, which in turn applied the proceeds to the mortgages held by the Cottons on the properties.

First American Bank claims to have complied with the terms of the insurance policy, and further, that although Underwriters paid some amount of proceeds for each of the seven (7) properties, it failed to pay any additional amounts after a public adjuster submitted a supplemental proof-of-loss form and detailed repair estimate for each property.

It is undisputed that First American Bank is the insured party under the Policy.[14] The Policy insures covered property

---

[13] Rec. Doc. No. 121-1 at 6.
[14] Rec. Doc. No. 121-8 at 46 (Exhibit D), Flood Mortgage Security Excess Coverage Endorsement; Rec. Doc. No. 121-8 at 47, Non-Participating Community Endorsement; Rec. Doc. No. 121-8 at 48, Commercial Business Property

6

against "all direct physical loss by or from flood."[15] The Policy provides:

> Q. Conditions for Filing a Lawsuit: You may not sue to recover money under this policy unless you have complied with all the requirements of the policy. **If you do sue, you must start the suit within 12 months from the date we mailed you notice that we have denied your claim, or part of your claim, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss.**[16]

The Policy further provides, in pertinent part:

> J. Requirements in Case of Loss: Should a flood loss occur to any insured property, you must:
>
> 1. Notify us in writing as soon as practicable;
>
> 2. As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it; and
>
> 3. Within 60 days after the loss, send us a proof of loss, which is your statement as to the amount you are claiming under the policy signed and sworn to by you and furnishing us with the following information:
>
>    a. The date and time of the loss;
>
>    b. A brief explanation of how the loss happened;
>
>    c. Your interest in the property damaged and the interest, if any, of others in the damaged property;

---

Endorsement; Rec. Doc. No. 121-8 at 49, Special Provisions Endorsement; Rec. Doc. No. 121-8 at 51, Conformity to Coverage Endorsement.
[15] Rec. Doc. No. 121-8 at 24 (Exhibit D), Flood Mortgage Security Policy Residential Property Policy Endorsement.
[16] Rec. Doc. No. 121-8 at 44 (Exhibit D), Flood Mortgage Security Policy Residential Property Policy Endorsement.

7

          d. The actual cash value or replacement cost, whichever is appropriate, of each damaged item of insured property and the amount of damaged sustained;[17]

The Cottons allege their property was damaged during Hurricane Isaac in August, 2012. Under the terms of the force-placed Policy, First American Bank had 60 days to file a proper proof of loss. On or around October 30, 2012 and on November 1, 2012, First American Bank submitted seven sworn "Proof of Loss" statements relating to the Cottons' properties, seeking recovery for loss under the terms of the Policy.[18] On November 5, 2012, Underwriters issued seven notices informing First American Bank that payment in various amounts was enclosed.[19]

First American contends that it further directed Underwriters to deal directly with the homeowner, Mr. Cotton, who hired a public adjuster, Michael Michio, and that

---

[17] Rec. Doc. No. 121-8 at 41 (Exhibit D), Flood Mortgage Security Policy Residential Property Policy Endorsement.

[18] Rec. Doc. No. 121-9 (Exhibit E), Sworn Statement in Proof of Loss.

[19] The first statement claimed $34,792.13, and by letter dated November 5, 2012, Underwriters notified First American Bank that payment would be issued on that amount.

A second statement claimed $28,225.61, and Underwriters notified the insured that payment on that amount was enclosed.[19] The third claimed $29, 694.34, and Underwriters similarly notified that exact payment was enclosed.[19]

A fourth claimed $24, 340.72, and Underwriters notified the insured that payment was being issued in the amount of $30, 022.63.[19]

A fifth claimed $30, 022.63, and Underwriters notified that payment in that amount was enclosed.[19]

A sixth claimed $29, 193.66, and Underwriters informed that payment in nearly that exact amount was enclosed.[19]

A seventh claimed $41, 691.05, and Underwriters informed that payment was being enclosed in the amount of $30, 022.63

8

"[a]lthough Underwriters paid some amount of proceeds for each property, it failed to pay any additional amounts after Michio submitted a supplemental proof-of-loss form and detailed repair estimate for each property."[20] This supplemental proof-of-loss form was executed by Mr. Cotton on October 23, 2013.

The issue is whether the purported execution and submission of a supplemental proof of loss form by Mr. Cotton precludes summary judgment in favor of Underwriters and against First American Bank. The Policy provides that: "[t]his insurance policy is delivered as surplus line coverage under the insurance code of Louisiana."[21] Under Louisiana law, the ordinary meaning of the text in an insurance policy governs in the absence of an absurd result, and each provision is read in light of the others. In the case of ambiguity, Louisiana courts construe insurance contracts against the insurer in favor of coverage. *Williamson v. J.C. Penney Life Ins. Co.,* 226 F.3d 408 (5th Cir. 2000).

In the fire insurance context, the Louisiana Supreme Court has stated:

> The proof of loss is not required to be in any formal style. *Gatte v. Coal Operators Casualty Co.,* 225 So.2d 256, 258 (La. App. 3d Cir. 1969), *rev'd on other grounds,* 256 La. 325, 236 So.2d 485 (1970) (citing *Moore v. St. Paul Fire & Marine Insurance Co.,* 193 So.2d 882 (La. App. 3d Cir. 1967)). As long as the insurer receives sufficient

---

[20] Rec. Doc. No. 124 at 1.
[21] Rec. Doc. No. 128-1 at 5.

information to act on the claim, "the manner in which it obtains the information is immaterial." *Austin v. Parker,* 672 F.2d at 508, 520 (5th Cir. 1982).

Robert Ellenberg appears to have participated as an independent adjuster on contract with Simsol Insurance Services, which in turn contracts with Seattle Specialty, which in turn contracts with Underwriters. According to Underwriters, Ellenberg was not acting as its agent; however, Ellenberg was initially tasked with adjusting First American Bank's claims. Ellenberg's "Interim Report" dated October 3, 2012, states that "[a]t the request of the insured, First American Bank & Trust, I have worked with the property owner, Alford [sic] Cotton...I contacted the property owner on 9/07/2012. Arrangements were made to meet on 9/09/2012 to inspect the risk and review the damages."[22] In reports dated October 3, 2012 – October 25, 2012 and with respect to the 7 individual properties, Ellenberg states that "[t]he insured is the mortgage holder. They instructed us to work with the property owner to reach an agreed scope and price for the damages. However, the insured will be the one executing the proof of loss."[23] In late October, Ellenberg prepared Closing Reports on each property.

Further, the proof-of-Loss forms executed by Mr. Cotton in late October of 2012 and claimed to have been submitted as

---

[22] Rec. Doc. No. 128-4 at 9.
[23] Rec. Doc. No. 128-4 at 10.

supplemental proof of loss, pertain to the National Flood Insurance Program and identify a Policy number that differs from that assigned to the force-placed policy.[24] Mr. Michio explains that these forms were the only forms on hand, and further, that the policy numbers relate to the wind policy, as he had yet to obtain the flood policy documentation.[25] The foregoing supports a finding that First American Bank intended to only submit the aforementioned seven (7) proof of loss statements in late October based on Ellenberg's reports and recommendations.

First Amendment Bank's participation in this suit appears to be at the urging of the Cottons. Notwithstanding the veracity of First American Bank's and/or the Cottons' contentions, the following precludes summary judgment in favor of Underwriters: it is unclear whether First American Bank submitted a supplemental proof of loss claim, in addition to the seven (7) statements upon which payments were issued. According to Mr. Michio, the supplemental proof of loss forms and estimates were sent directly to Underwriters via fax.[26] Mr. Michio claims to have discussed the supplemental proof of loss forms with Mr. Ellenberg, after faxing in the documents to Underwriters.[27] It is unclear whether Mr. Ellenberg was acting independently or on behalf of Underwriters with regard to the adjustment of claims

---

[24] Rec. Doc. No. 129-2 at 5.
[25] Rec. Doc. No. 129-1 at 63.
[26] Rec. Doc. No. 129-1 at 57.
[27] Rec. Doc. No. 129-1 at 62.

at issue. It is undisputed that Underwriters only resolved seven (7) claims.

In sum, there remains a genuine issue of material fact as to whether First American Bank submitted a supplemental proof of loss, and thus, Underwriters' Motion for Summary Judgment as to First American Bank's claims is accordingly denied.

B. *Underwriters' Motion for Summary Judgment as to Cotton Claims*

Underwriters contends that "after discovery has closed in this matter, the Cottons cannot show any genuine issue of material facts that they were the insureds under the flood policy issued by Underwriters and therefore have no standing to sue Underwriters."

First American Bank is the undisputed sole insured party under the Policy. The Cottons have been aware of Defendant's objection to their standing to sue Underwriters since January 14, 2015, when Underwriters filed its first *Motion to Dismiss*. The Cottons responded by filing a *Motion for Leave to File Second Amended Complaint*, which effectively joined First American Bank as a Plaintiff to this action. In the Second Amended Complaint, the Cottons assert claims against their wind insurance provider, Scottsdale Insurance, and First American Bank asserts claims against Underwriters under the Policy at issue here. Scottsdale

12

Insurance has since been dismissed with prejudice from this matter, upon a motion by the Cottons.

In response, the Cottons rely upon the Court's prior orders dismissing Underwriters' challenge, and argue against dismissal of their claims against Underwriters; however, plainly ignore their misrepresentations to the Court, namely, the fact that claims against Underwriters are being asserted by them. In the absence of these misrepresentations, Underwriters should have been accorded relief upon its *Motion to Dismiss for Lack of Standing*. The Cottons are not named insured, additional insured, or third-party beneficiaries under the Policy, and plainly lack standing to assert claims against Underwriters.

Federal Rule of Civil Procedure 17(a) governs who is the proper party to assert a claim, and it provides that "[e]very action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "The real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *Wieburg v. GTE Sw., Inc.,* 272 F.3d 302, 306 (5th Cir.2001); *see also Farrell Constr. Co. v. Jefferson Parish,* 896 F.2d 136, 140 (5th Cir. 1990).

As there exists no insurance contract between Underwriters and the Cottons, Underwriters is entitled to summary judgment on

any and all claims asserted against them by the Cottons under the terms of the Policy.

IV.   **CONCLUSION**

Accordingly, **IT IS ORDERED** that Motion for Summary Judgment as to First American Bank and Trust's claims (Rec. Doc. No. 121) is **DENIED,** and the Motion for Summary Judgment as to the Cottons' claims (Rec. Doc. No. 122) is **GRANTED.**

New Orleans, Louisiana, this 17th day of August, 2015.

*[signature]*

UNITED STATES DISTRICT JUDGE