UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALFRED COTTON, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-6270** |
| **SCOTTSDALE INSURANCE COMPANY, AND CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON** | **SECTION "B"(2)** |

## ORDER AND REASONS

Before the Court is Defendant, Certain Underwriters at Lloyd's, London's Fed. R. Civ. P. 12(b)(1) Motion to Dismiss the claims of First American Bank & Trust ("First American Bank").[1] Plaintiff, First American Bank has filed a response in opposition.[2] The motion is set for expedited submission on Friday, August 21, 2015.[3] Accordingly, finding no need for oral argument, and for the reasons enumerated below, **IT IS ORDERED** that the Motion to Dismiss for Lack of Standing brought pursuant to Fed. R. Civ. P. 12(b)(1) is **DENIED**.

### I. FACTS AND PROCEDURAL HISTORY

Plaintiffs, Alfred and Rubbie Cotton ("Cottons") filed suit seeking to recover for alleged flood and wind damage to their 7

---

[1] Rec. Doc. No. 162.

[2] Rec. Doc. No. 154.

[3] Rec. Doc. No. 159.

1

rental properties ("Properties") located in LaPlace, Louisiana sustained on August 28, 2012, as a result of Hurricane Isaac.[4] On October 28, 2013, Plaintiffs filed their Original Complaint, against their windstorm insurance provider, Scottsdale Insurance Company, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. On December 30, 2013, Plaintiffs filed an amended complaint, First Amended Complaint ("FAC"), joining as a Defendant Underwriters at Lloyd's, London, and asserting claims for declaratory judgment and breach of contract, and invoking this Court's jurisdiction under 28 U.S.C. § 1331 (Federal Question), and 42 U.S.C. § 4053.[5]

Underwriters at Lloyd's, London ("Underwriters") are members of Syndicate 1414, which severally subscribed to a flood mortgage security policy in favor of First American Bank & Trust ("First American Bank").[6] Plaintiffs base their claims against Underwriters under the policy, a force-placed and/or lender-placed policy, identified with Master Policy No. PG1200564790005

---

[4] Rec. Doc. No. 55, Second Amended Complaint ("SAC").

[5] Section 4053 provides that flood insurance policyholders may sue their insurers in federal court in regard to disputes arising from the policies. The federal courts premise their jurisdiction under the National Flood Insurance Act ("NFIA") upon the fact that policies under the National Flood Insurance Program ("NFIP") are paid from the federal treasury. *See Landry v. State Farm Fire & Cas. Co.*, 428 F.Supp. 2d 531, 533 (E.D. La. 2006).

On July 29, 2015, the Court *sua sponte* raised the issue of subject matter jurisdiction, considering the flood policy at issue is not a Standard Flood Insurance Policy issued pursuant to the NFIP. Plaintiffs conceded subject matter jurisdiction was lacking under Section 4053; however, submitted this Court retains diversity jurisdiction under 28 U.S.C. § 1332 over the case: Plaintiffs seek more than $75,000 in damages, exclusive of interest and costs, and complete diversity is present. Plaintiffs, the Cottons and First American Bank are citizens of Louisiana. Underwriters is a citizen of a foreign state, the United Kingdom.

[6] Rec. Doc. No. 55 at 9.

2

("Policy"). The Policy was issued because the Cottons, as mortgagors of the Properties at issue, failed to secure flood insurance for the Properties. In turn, the Cottons' mortgage holder, First American, secured coverage to protect its financial interests in the Properties.

On January 14, 2015, Underwriters promptly moved to dismiss the litigation for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1), on the basis that there existed no legal relationship between Plaintiffs and Underwriters by which Plaintiffs could assert a cause of action.[7]

The Cottons immediately moved for leave to file an amended complaint. Over Underwriters' objection that amendment would be futile on the basis that First American Bank's claims had already prescribed, the Magistrate Judge, noting Fed. R. Civ. P. 15's liberal bias in favor of amendment, granted the Cottons' motion, and First American Bank was joined as a Plaintiff to this action.[8] The Magistrate Judge further noted: "I cannot conclude that the amendment is futile on prescription grounds, as defendant seems to argue because the amendment may relate back to the previous applicable filing under Fed. R. Civ. P. 15(c)(1).[9] This Court subsequently dismissed Underwriters' Fed.

---

[7] Rec. Doc. No. 43.

[8] Rec. Doc. No. 54 at 2. (Order on Motion signed by Magistrate Judge Wilkinson).

[9] Rec. Doc. No. 54 at 2 (Order on Motion signed by Magistrate Judge Wilkinson).

3

R. Civ. P. 12(b)(1) motion as moot, considering the amended complaint added the undisputed insurance policy holder, First American Bank asserting its legal rights and interests thereunder.

On July 15, 2015, Underwriters moved the Court for summary judgment as to First American Bank's claims, as well as the Cottons' claims.[10] The Court granted Underwriters summary judgment, dismissing the Cottons' claims, on the basis that there existed no insurance contract between the Cottons and Underwriters that would provide them with standing to assert claims arising under the Policy against Underwriters.[11] To the extent dismissal was sought as to First American Bank's claim, the Court denied Underwriters summary judgment, as the disputed issue of whether a supplemental proof of loss was submitted precluded such relief.[12]

## II. CONTENTIONS OF THE MOVANT

Underwriters contends that First American Bank's claims are not properly before this Court because the Court lacks subject matter jurisdiction over First American Bank's claims. Underwriters contends that the Cottons never had standing to sue

---

[10] Rec. Doc. No. 121, 122.

[11] Rec. Doc. No. 151.

[12] Rec. Doc. No. 151.

Underwriters, and therefore, the Cottons lacked the authority to add a new plaintiff because there was never any case or controversy between the Cottons and Underwriters. Underwriters further contends that First American Bank's claims had prescribed when it was added to this suit.

**III.  LAW AND ANALYSIS**

    A. *Whether First American Bank's Claims should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) authorizes the dismissal of a case for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998); *Harrison v. Safeco Ins. Co. of Am.*, 2007 WL 1244268, at *3 (E.D. La. Jan. 26, 2007). "[T]he issue of standing is one of subject matter jurisdiction," *Cobb v. Cent. States,* 461 F.3d 632, 635 (5th Cir. 2006), and in this diversity case the substantive law of Louisiana governing Plaintiffs' cause of action determines whether they have standing to sue.

For the first time in this litigation, Underwriters urges dismissal is warranted by *Summit Office Park, Inc. v. United States Steel Corp*., 639.F2d 1278, 1282 (5th Cir. Tex. 1981). In that case, an intervening decision by the U.S. Supreme Court excluded certain plaintiffs, such as Summit Office Park, from

5

having a cause of action under federal antitrust laws and changed the cause of action available to other plaintiffs. *Summit Office Park*, 639 F.2d at 1280. Relying on the U.S. Supreme Court's ruling, the district court denied plaintiff leave to amend and substitute new plaintiffs, and dismissed the action, since plaintiff had no standing to amend, and no plaintiff with standing was before the court. *Id.*; *Lans v. Gateway 2000, Inc.,* 84 F.Supp.2d 112, (D. D.C. November 23, 1999)("if a plaintiff lacks standing to be before the court from the time of the filing of the original complaint, there is no action for him to amend, since the court is deprived of subject matter jurisdiction over the entire matter.").

In affirming the dismissal, the appellate court noted the uniqueness of the procedural history of the case in which "the original plaintiff was left with no cause of action upon which it could recover as the result of an intervening Supreme Court decision." *Id*. at 1282. Thus, the Fifth Circuit held that "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action." *Id*. at 1282.

The narrow issue before the court in *Summit* was whether an amendment to the complaint could be offered by the plaintiff, and considering there was no plaintiff before the court with a

6

valid cause of action, there was no proper party available to amend the complaint. *Id*.

Underwriters contends that "[l]ike *Summit*, there is nothing the Cottons can do to amend their own complaint to assert standing and invoke this Court's subject matter jurisdiction"; however, the amendment at issue had already been addressed and granted by the Magistrate Judge. Underwriters further ignores that the Fifth Circuit stated in Summit:

> The principal issue involved is not whether the complaint can be amended as a matter of course, as urged by [Summit], but under the special circumstances here whether Summit could offer an amendment to the complaint at all. Since there was no plaintiff before the court with a valid cause of action, there was no party available to amend the complaint. Thus none of the appellants had a right to file the amended complaint.

*Id*.

Underwriters correctly notes 'Rule 15 does not allow a party to amend to create jurisdiction where none actually existed.'" *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995)(quoting *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 776 (5th Cir. 1986)).[13] Fed. R. Civ. P. 15 does not permit a plaintiff to amend its complaint to substitute a new plaintiff in order to cure the lack of subject matter jurisdiction. *Aetna Casualty & Surety Co.*, 796 F.2d at 774.

---

[13] *Hillman* involved an amendment to a complaint to drop a non-diverse plaintiff and add a diverse entity as plaintiff to cure the jurisdictional defect. The Fifth Circuit explained that if there was no diversity jurisdiction in the initial complaint, the Plaintiff has no ability to assert a claim against other defendants in an amended complaint. 796 F.2d at 774.

7

However, the procedural history and facts of this case are unique and distinguishable from *Summit Office Park* and cases relied upon by Underwriters. First, the Cottons initially filed suit against their windstorm insurance provider, Scottsdale Insurance Company. The Cottons subsequently amended their complaint to join Underwriters as a Defendant, and to assert claims under the flood insurance Policy. It is undisputed that First American Bank is the named insured party under the flood Policy. The Court properly had diversity jurisdiction at the time of amendment.

As First American Bank notes, "it is undisputed that the Cottons had a valid cause of action against Scottsdale at the times they amended the complaint to join Underwriters and First American."[14] Thus, the Court "had subject matter jurisdiction over the case at all times, including when it exercised its power by granting the Cottons' Motion for Leave to File a Second Amended Complaint adding First American as an additional plaintiff."[15]

As confirmed by this Court's recent Order & Reasons dismissing the Cottons' claims, the Cottons lack[ed] standing to

---

[14] Rec. Doc. No. 162 at 7.

[15] Rec. Doc. No. 162 at 5 (Plaintiff First American Bank and Trust's Memorandum in Opposition to Defendant's Motion to Dismiss).

assert claims against Underwriters.[16] The Cottons are not named insured, additional insured,[17] or third-party beneficiaries to the Policy.[18] The lender-placed policy was only issued to First American Bank to protect its interest in the Properties.

Under Fed. R. Civ. P. 17(a)(3), the Cottons' amendment adding First American Bank was proper, as the latter was the real party in interest to the Policy. The "court may not dismiss an action for failure to prosecute in the name the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." Fed. R. Civ. P.

---

[16] Rec. Doc. No. 151.

[17] The Insuring Agreement's endorsement, which forms part of the Master Policy, provides that the Policy is issued to Insured Lender, First American Bank & Trust by Underwriters. Article I, 'Persons Insured,' provides: "[w]e insure only the Insured named in the Declaration Page attached to and forming part of this Policy." The Declarations page identifies First American Bank as the insured party.

[18] The Louisiana Supreme Court has clarified that there are three requirements to create a third-party beneficiary or stipulation *pour autrui*: (1) the stipulation for a third party is manifestly clear; (2) there is certainty as to the benefit provided the third party; and (3) the benefit is not a mere incident of the contract between the promisor and the promise. *Mingo v. Meritplan Insurance Company*, No. 2:06 CV 1914, 2007 WL 4292026, at *3 (W.D. La. Dec. 4, 2007)(citing *Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary*, 939 So.2d 1206, 1211 (La. 2006)); *see* La. Code Civ. P. art. 1978.

A stipulation *pour autrui* in an insurance contract "would have to be in writing to be effective." *LaSalle Parish School Bd. V. Allianz Global Risks U.S. Ins. Co*., No. 07-0399, 2008 WL 1859847, at *8 (W.D. La. Apr. 24, 2008). No such written stipulation for the benefit of Plaintiffs appears in the Flood Policy.[18] *Cf. Graphia v. Balboa Insurance Company,* 517 F.Supp.2d 854 (E.D. La. Sept. 28, 2007)(concluding that although the plaintiff had received compensation from insurer and could ultimately be responsible for compensating mortgagor for insurance premiums, plaintiff was not a third-party beneficiary to the insurance policy).

17(a)(3). The claims asserted by First American Bank in the SAC are nearly identical to those asserted by the Cottons in the FAC; and the SAC substitutes First American Bank for the Cottons as the plaintiff making the claims. This Court's subject matter jurisdiction over the Cotton case was not lost merely because First American was the real party in interest as to the claims against the Underwriters. *Kramer ex rel. Kraemer v. Pennsylvania,* Civ. A. No. 10-4868, 2011 WL 4336671, at *1 (E.D. Pa. Sept. 15, 2011)("though the [c]ourt maintains that the suit must be brought by the real party in interest, the [c]ourt finds that this does not strip the [c]ourt of subject matter jurisdiction over this matter). Underwriters' argument that addition of First American Bank under Rule 17 was improper, should have been raised in its opposition to the Motion for Leave before the Magistrate Judge, and is arguably waived. *See Brown v. Illinois Cent. R. Co.,* 480 F. App'x 753, 754 (5th Cir. 2010).

Applying the narrow holding in *Summit*, this district court, in the multi-district litigation context has held that an amendment adding in a plaintiff with standing to assert claims against defendant did not form the basis for dismissal pursuant to Fed. R. Civ. 12(b)(1). *In re FEMA Trailer Formaldehyde Products Liability Litigation*, No. MDL 07-1873, 2008 WL 4899455, at *3 (E.D. La. Nov. 12, 2008)(Engelhardt, J). In that case,

Horton was named as a defendant in a master complaint. Horton argued that plaintiffs could not amend the master complaint by substituting a new plaintiff that matched him in order to create jurisdiction where no jurisdiction previously existed as to him. *Id*. at *1. The court found that because the allegations contained in the amended master complaint established standing for several other plaintiffs originally named in the master complaint, plaintiffs had standing to amend the complaint to add a plaintiff with standing to assert claims against Horton. *Id*. at *3. *In Re FEMA Trailer Formaldehyde*, the court noted that:

> [h]ad Plaintiffs been unable to match any existing named plaintiff to a particular manufacturing defendant, then this [c]ourt would have to dismiss this particular suit and deny the right to amend, as plaintiffs would be attempted to amend to create jurisdiction where none existed. Here, the matching of several plaintiffs to several manufacturing defendants demonstrates that standing to amend exists.

The court's analysis in *In re FEMA Trailer Formaldehyde* is instructive here. In this case, although the Cottons lacked standing to ultimately prosecute claims against Underwriters, they certainly had standing to file the Original Complaint against their windstorm insurer, Scottsdale Insurance. The Court had subject matter jurisdiction over the matter, and thus, the Cottons were not attempting via amendment to create jurisdiction, as it existed at the time of amendment.

Underwriters also mistakenly relies upon *Aetna Casualty & Surety Co. v. Hillman*, a matter where the plaintiff that commenced the suit discovered it lacked diversity with the defendants and subsequently moved to amend the complaint to substitute a diverse party. 796 F.2d at 772. The Fifth Circuit there affirmed the district court, and ruled that the first non-diverse party could not amend because the first plaintiff's lack of diversity meant that the court had no jurisdiction over the matter and thus no jurisdiction to hear the amendment. *Id*. at 774. However, as previously discussed, this is not the case here.

The Court concludes that Underwriters' argument that the Cottons are attempting to create jurisdiction where none existed, is incorrect and not supported by the facts of this case and relevant precedent. This Court had "[diversity] jurisdiction over this case from the outset when, on October 28, 2013, the Cottons initially brought suit against defendant Scottsdale for wind-related damage to the seven properties under the insurance policies issued to them."[19] The Court continued to have subject matter jurisdiction when the Cottons filed an amended complaint addition Underwriters as an additional defendant, and when they later filed the SAC adding First American Bank as a plaintiff. The Cottons had standing to assert

---
[19] Rec. Doc. No. 162 at 4.

claims from the outset of the case, and Underwriters recognized this when it stipulated to subject matter jurisdiction beginning with its first pleading.[20]

Moreover, the Court could treat the motion for leave to amend to add First American Bank as an intervention by First American under Rule 24 of the Federal Rules of Civil Procedure. *Effjohn Inte'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552 (5th Cir. 2003). "First American Bank clearly would have had a right to intervene at the time that it filed its motion for leave to amend because it had a claim that shared with the main action a common question of law or fact as required by Rule 24," and as the Court finds, intervention would have been appropriate.[21]

B. *Whether First American Bank's Claims are Prescribed*

Underwriters contends that any claim First American Bank had under its insurance contract was prescribed on the first day it asserted any claim because the damages for which the Cottons asserted their claim, occurred on or about August 29, 2012, and the Cotton requested leave to file the Second Amended Complaint ("SAC"), wherein First American Bank asserted claims against

---

[20] Rec. Doc. No. 21 at 1.

[21] Rec. Doc. No. 162 at 14.

Underwriters, on January 26, 2015.[22] The Cottons filed their First Amended Complaint ("FAC") asserting claims against Underwriters on December 30, 2013.[23]

Underwriters invokes the twenty-four month prescription period allowed in Louisiana, for first-party claims, and as agreed upon by First American Bank and Underwriters in the relevant policy. La. Rev. Stat. Ann. § 22:868(B).[24] Thus, any claim which could be asserted by First American Bank prescribed on August 24, 2014, prior to the date when First American asserted any claim in this matter.[25]

State statute in fact prescribes a period of not less that twenty-four months from the inception of the loss. Whereas, the Policy itself provides: "if you do sue, you must start the suit within twelve months from the date we mailed you notice that we have denied your claim."[26] If the Policy operates to provide less than twenty-four months from the date of loss, the statute applies.

---

[22] Rec. Doc. No. 46.

[23] Rec. Doc. No. 13.

[24] No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state or any health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement limiting right of action against the insurer to a period of less than twenty-four months next after the inception of the loss when the claim is a first-party claim, as defined in R.S. 22: 1692. La. Rev. Stat. Ann. § 22:868.

[25] However, state statute does not provide whether the prescriptive period commences from the date of the loss, but simply provides a minimum period.

[26] Rec. Doc. No. 35-2 at 29, Section Q (Policy).

If the twelve month period applies, as Underwriters denies receiving a supplemental proof of loss claim, the earliest denial came in the form of Underwriters' answer filed on May 7, 2015, in response to First American Bank's claims asserted in the SAC, filed January 26, 2015.

If the twenty-four month period applies, the issue may properly be addressed by resolving whether First American Bank's claims asserted in the SAC relate back to the FAC. "Initial defects in standing are remediable through an amended complaint." *Haddad Bros., Inc. v. Little Things Mean A Lot, Inc.,* No. 00Civ.0578, 2000 WL 1099866, at *9 (S.D. N.Y. Aug. 4, 2000). The amendment of an original complaint to add a party in interest will therefore relate back to the filing date of the original complaint. *See Tidewater Marine Towing, Inc. v. Dow Chemical Co., Inc.,* 689 F.2d 1251, 1253 (5th Cir. 1982) (amended complaint by personal representative related back to original complaint filed by plaintiff without standing).

In *Ray v. Liberty Indus. Life Ins. Co.*, 180 So. 855 (La. Ct. App. 1938) the court held that:

> ...it had been well settled that the running of prescription was interrupted by an earlier suit which fairly apprised the obligor of the existence of the claim, and that technical defects to parties plaintiff or in citation did not alter the situation, and, as we have said, this rule was well established as a result of the provisions of the Civil Code – notably 3484 – even before the enactment of the statute to which we have referred.

Although Rule 15(c) speaks only to naming additional defendants and does not expressly address the relation back of amendments changing or adding plaintiffs, courts have nonetheless relied on the traditional factors of notice and unfair prejudice embodied in the rule. *See* Advisory Committee Notes, Fed. R. Civ. P. 15, 1996 Amendment.

In determination of whether a new plaintiff's claims relate back to the original complaint, courts consider whether "(1) the new plaintiff's claim arose of the same conduct, transaction or occurrence set forth in the original complain; (2) the new plaintiff shares an identity of interest with the original; (3) the defendants have fair notice of the new plaintiff's claim; and (4) the addition of the new plaintiff causes the defendant cause the defendants prejudice. Fed. R. Civ. P. 15(c); *Altamirano v. Vickers*, No. Civ. A. 02-3805, 2004 WL 1147002 (E.D. La. 2004).

The claims asserted by First American Bank in the SAC against Underwriters are precisely the same claims asserted in the FAC and relate to flood damage sustained by the Cotton Properties as a result Hurricane Isaac. As the mortgagor and as the homeowners, First American Bank, and the Cottons, respectively share a similar interest in the Cotton Properties. Because those claims arose under the terms of the flood

insurance Policy issued to First American Bank, Underwriters had fair notice of First American Bank's claims. "[I]n our view, lack of notice and unfair prejudice go hand in hand." *Young v. Lepone*, 305 F.2d 1, 16-17 (1st Cir. 2002). Thus, although Underwriters may have to defend against a claim that it might have thought was barred based on the passage of time, Underwriters is not prejudiced in its defense by allowing the SAC, wherein First American Bank asserts claims against it, to relate back to the FAC, and deeming those claims timely and not prescribed.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that the Motion to Dismiss for Lack of Standing brought pursuant to Fed. R. Civ. P. 12(b)(1) is **DENIED**.

New Orleans, Louisiana, this 21st day of August, 2015.

*[signature]*
UNITED STATES DISTRICT JUDGE