```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

**ALFRED COTTON, ET AL.**                                  **CIVIL ACTION**

**VERSUS**                                                 **NO. 13-6270**

**SCOTTSDALE INSURANCE COMPANY**                           **SECTION "B"(2)**

**ORDER AND REASONS**

I.  **NATURE OF THE MOTION AND RELIEF SOUGHT**

Before the Court is a Fed. R. Civ. P. Rule 50(b) renewed Motion for Judgment as a Matter of Law filed by Defendant, Certain Underwriters at Lloyd's of London (hereinafter "Underwriters" or "Defendant") seeking judgment in its favor and dismissal of all of Plaintiff's claims with prejudice. (Rec. Doc. No. 174 at 1). In the alternative, Underwriters' Motion requests a new trial under Fed. R. Civ. P. Rule 59. (Rec. Doc. No. 174 at 1).

**IT IS ORDERED** that the Motion is **DENIED**.

II. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of an insurance dispute stemming from damage caused by Hurricane Isaac in August of 2012. First American Bank and Trust (hereinafter "First American") was the mortgage holder for several properties owned by the Cottons. (Rec. Doc. No. 164 at 2-3). Because the Cottons failed to secure flood insurance for their properties, First American obtained coverage to protect its financial interests through Lloyd's of

1

London. (Rec. Doc. No. 164 at 2-3). After Plaintiffs' claims against Scottsdale Insurance Company were dismissed on a 12(b)(6) motion (Rec. Doc. No. 86), and all of the Cottons' remaining claims were dismissed on summary judgment (Rec. Doc. No. 151), Underwriters and First American proceeded to trial. At trial the following evidence was presented.

Underwriters contracted with Seattle Specialty, a claims handler, to manage a number of its insurance policies, including claims by First American. Bob Quigley was the claims handler at Seattle Specialty responsible for handling First American's claims. (Trial Transcript No. 2 at 59). Seattle Speciality contracted with Simsol, a company that provided adjusters to go out and assess damaged property. (Trial Transcript No. 2 at 63). Simsol's adjuster working this case was Robert Ellenberg. Quigley testified that Seattle Specialty paid out on claims filed by First American. (Trial Transcript No. 2 at 67-68). However, he testified that he was not aware of additional claims filed by any other individuals regarding First American's policy with Undewriters. ((Trial Transcript No. 2 at 68). Ellenberg also testified that he did not receive any documentation from any other individuals. (Trial Transcript No. 2 at 45).

Michael Michio, a public adjuster, was hired by Alfred Cotton to assess the damage to his properties and submit a claim to Underwriters. (Trial Transcript No. 1 at 55). Michio

testified that he submitted, via facsimile, a proof of loss with detailed information to Underwriters. (Trial Transcript No. 2 at 19). Underwriters deny ever receiving that proof of loss or being made aware of it. Michio also testified that he spoke with Mr. Ellenberg regarding his claim forms. (Trial Transcript No. 2 at 22). Elleneberg allegedly told him that he was no longer working that case and provided Michio with a fax number to which he could submit the documentation. (Trial Transcript No. 2 at 28). Michio admitted during his testimony that it was a very busy time in the insurance business and that often times insurers claimed not to have received claim documentation. (Trial Transcript No. 2 at 19-24). However, he urged that he did submit the proof of loss and accompanying information via fax, despite his lack of a fax confirmation sheet. (Trial Transcript No. 2 at 23).

Following a three-day trial, the jury ruled in favor of First American, finding Plaintiff entitled to damages for breach of contract. Twice during trial, Underwriters moved for judgment as a matter of law under Fed. R. Civ. P. Rule 50(a). Both times, this Court denied those motions. Underwriters now renew the motion for judgment as a matter of law on the ground that First American did not set forth a legally sufficient evidentiary basis for a reasonable jury to find a breach of contract.

### III. **THE PARTIES' CONTENTIONS**

It appears that the issues at the heart of Underwriters' motion are the meaning of "satisfactory proof of loss" under Louisiana law and whether First American put forth sufficient evidence to support the jury's finding that Underwriters received satisfactory proof of loss.[1] Under the insurance contract between the parties, First American was required to submit to Underwriters a signed and sworn proof of loss detailing specific aspects of the claim in order for Underwriters to accept that claim. (Rec. Doc. No. 121-8 at 41-42). In its Motion for Summary Judgment and its objections to First American's Proposed Jury Instructions, Defendant repeatedly contended that the alleged proof of loss submitted by Mr. Michio was insufficient because it did not comport with the terms of the contract. (Rec. Doc. Nos. 121 at 3-6; 160 at 9). However, in the instant motion, Defendant appears to have abandoned that argument, instead seemingly conceding that the term "proof of loss," as used in the insurance contract, was meant to be interpreted in accordance with prevailing Louisiana jurisprudence.

---

[1] On the first question of the jury verdict form, the jury answered "Yes" to the question: "Did Underwriters receive sufficient information that the $218,184.61 that it had paid for the seven properties was not sufficient to repair the properties to their pre-Hurricane Isaac condition?" (Rec. Doc. No. 170-3 at 1). Underwriters seemingly contend that they never received sufficient information regarding the deficiency of the funds paid because the standard for satisfactory proof of loss was not met.

Underwriters maintain that satisfactory proof of loss occurs when the insurer has actual knowledge of the facts underlying the claim, including the extent of the injury. (Rec. Doc. No. 174-1 at 4-5). While Defendant's memorandum in support of the present motion states that no specific form is required, Underwriters go on to contend that certain documentation must be submitted. Defendant claims that First American did not carry its burden of proving satisfactory proof of loss, because the alleged facsimile sent by Mr. Michael Michio, the adjuster hired by Mr. Cotton, was never received and there is no evidence of a confirmation sheet. (Rec. Doc. No. 174-1 at 7-8). Additionally, Underwriters contend that any phone conversations between Mr. Michio and their independent adjuster, Mr. Ellenberg, did not meet the standard for satisfactory proof of loss, and moreover, that Michio and Ellenberg were not acting representatives for either party at the time of any alleged conversation. (Rec. Doc. No. 174-1 at 6-7). Finally, Underwriters claim that even if Mr. Michio did submit a proof of loss, it contained incorrect information and was thus invalid. (Rec. Doc. No. 174-1 at 8). For the same reasons, Defendant also seeks a new trial if this Court does not grant judgment as a matter of law.

Conversely, First American contends that the jury received ample evidence regarding the claim submitted by Mr. Michio that meets the standard of satisfactory proof of loss. Plaintiff

5

argues that the standard for satisfactory proof of loss is whether the insurer is fully apprised of the insured's claim, including the extent of the damage. (Rec. Doc. No. 175 at 3). Between evidence of the facsimile sent by Mr. Michio and his conversations with the Mr. Ellenberg, First American maintains that the jury had sufficient evidence to find that Underwriters received satisfactory proof of loss, thus supporting the judgment in favor of Plaintiff. (Rec. Doc. No. 175 at 6-7).

**IV. LAW AND ANLAYSIS**

   **a. Judgment as a Matter of Law**

Underwriters move for judgment as a matter of law pursuant to Fed R. Civ. P. Rule 50(b). There are two preliminary requirements for a party to file a Rule 50(b) motion: (1) the party must have moved for judgment as a matter of law at trial prior to the case's submission to the jury under rule 50(a); and (2) if the 50(a) motion is denied, the party must file its renewed motion for judgment as a matter of law within 28 days of the judgment. Fed. R. Civ P. Rule 50(b). Underwriters met both requirements by twice moving for judgment as a matter of law during trial (both of which were denied) and by filing the present Motion exactly 28 days after this Court entered judgment.

### 1. *Standard of Review*

Judgment as a matter of law is proper with a respect to a particular issue when the court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. Rule 50(a)(1). "This occurs when the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict." *Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F.3d 356, 362 (5th Cir. 2004) (citing *Coffel v. Stryker Corp.*, 284 F.3d 625, 630 (5th Cir. 2002). When applying this standard, a court "considers all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (quoting *Brown v. Bryan County, OK.*, 219 F.3d 450, 456 (5th Cir. 2000).

### 2. *Satisfactory Proof of Loss*

In Louisiana "[i]t is well settled that a 'satisfactory proof of loss' is only that which is 'sufficient to fully apprise the insurer of the insured's claims.'" *Louisiana Bag Co., Inc. v. Audubon Indem. Co.*, 2008-0453, p. 23 (La. 12/2/08); 999 So.2d 1104, 1119 (quoting *McDill, v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1089 (La. 1985)). The United States Court of Appeals for the Fifth Circuit has elaborated on that definition:

7

"Louisiana decisions demonstrate that "proof of loss" is a flexible requirement. An insurer of course must receive some kind of notice of a claim before it can act. So long as it receives enough information, the manner in which it obtains the information is immaterial." *Austin v. Parker*, 672 F.2d 508, 520 (5th Cir. 1982).

Underwriters attempt to rewrite the definition of proof of loss under Louisiana law. Even after acknowledging that a proof of loss under Louisiana law does not have to be writing (Rec. Doc. No. 174-1 at 5), Underwriters aim to convince this Court that "documentation" must be submitted to the insurer and that oral testimony alone is insufficient. (Rec. Doc. No. 174-1 at 7) (claiming that Mr. Michio's conversations with Mr. Ellenburg were insufficient because of a "lack of documentation" and that Mr. Michio's testimony that he faxed documentation to the insurer was insufficient because there was no "cover letter or commentary in any file.") This contention directly contradicts established law as well as concessions made by Defendant earlier in its supporting memorandum. *See Austin*, 672 F.2d at 520; Rec Doc. No. 174-1 at 5. Thus, this Court refuses to accept Underwriters' contention that physical documentation of the proof of loss must be received by the insurer, and instead will follow a long line of precedent declaring that the insurer simply must be put on notice of the claim and the basis for it.

8

Here, First American presented two significant pieces of evidence at trial. First, Mr. Michio testified that he faxed a full report to Underwriters containing a letter of representation, a copy of the sworn statement, a proof of loss, and a copy of his estimate. (Trial Transcript No. 2 at 19). A reasonable person could certainly find this evidence sufficient to put Underwriters on notice of the claim. Mr. Michio lacks a fax confirmation sheet, and the Defendants claim they never received the fax, but it is not the duty of this Court to weigh the evidence or determine credibility. (Trial Transcript No. 2 at 23, 45, 68). The jury easily could have found Mr. Michio's testimony more convincing than that of Mr. Quigley or Mr. Ellenberg. Simply because Defendants allege that they never received the fax does not mean the jury was unreasonable in finding that Underwriters received sufficient information concerning the claim. Even if some of the information on the claim forms was incorrect as Defendants allege, the forms were still obvious enough to make Underwriters aware of the claim, which is sufficient under Louisiana law. (Rec. Doc. No. 174-10).

Second, Mr. Michio testified that he relayed information over the phone to Mr. Ellenberg regarding an additional claim. (Trial Transcript No. 2 at 24). After trying to get in touch with numerous individuals at Underwriters, Mr. Michio testified that he could only get Mr. Ellenberg on the phone, and it was

Ellenburg who gave him the fax number for Underwriters. (Trial Transcript No. 2 at 23-24). Furthermore, as Mr. Ellenburg was a representative for Underwriters instructed to work with Mr. Cotton (though he was allegedly no longer working on the claim when Michio contacted him), and Mr. Michio was an adjuster representing Mr. Cotton, the conversation between the two could be seen as Underwriters' receipt of information concerning the proof of loss submitted by Mr. Michio. A reasonable jury could so find.

To the extent that Defendants contend this conversation could not have adequately informed Underwriters due to an alleged lack of principal-agent relationships, such an argument is irrelevant. The Louisiana standard for proof of loss simply requires that Underwriters receive notice, not that it is received by or from a particular individual. *See Austin*, 672 F.2d at 520. Again, Louisiana uses a very flexible definition of proof of loss. *Id*. Yet, even if an agency relationship were required, there is sufficient evidence in the record to support that finding based on the testimony of Michio, Quigley, and Ellenberg described above. Between the evidence of Mr. Michio's fax and his conversation with Mr. Ellenberg, there is enough support in the record for a reasonable jury to find that Defendants received sufficient information regarding an

additional claim. Accordingly, Underwriters' Motion for Judgment as a Matter of Law lacks merit.

### b. Request for a New Trial

Alternatively, however, Underwriters seek a new trial. Rule 59 provides that "[t]he court may . . . grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed R. Civ. P. Rule 59(a)(1). Though "[t]he rule does not specify what grounds are necessary to support such a decision," the Fifth Circuit has found that a new trial is justified if "the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985)(internal citations omitted). Seemingly, the only applicable ground for a new trial here is that the verdict is against the weight of the evidence.

However, "in an action based on state law but tried in federal court by reason of diversity of citizenship, a district court must apply a new trial . . . standard according to the state's law." *Fair v. Allen*, 669 F.3d 601, 604 (5th Cir. 2012). Under Louisiana law, a new trial is appropriate "when the verdict or judgment appears clearly contrary to the law and the evidence." *Davis v. Wal-Mart Stores, Inc.*, 2000-0445, p. 9 (La.

11/28/00); 774 So.2d 84, 92. "Louisiana gives the jury high deference," *Fair*, 669 F.3d at 605, and the "verdict should not be set aside if it is supportable by any fair interpretation of the evidence." *Davis*, 774 So.2d at 92. For the reasons set forth above in discussing the request for judgment as a matter of law, the jury's verdict was supportable by a fair and reasonable interpretation of the evidence. Therefore, Defendants have not demonstrated grounds for this Court to order a new trial.

V. **CONCLUSION**

In light of the foregoing,

**IT IS ORDERED** that the Motion is **DENIED** for lack of factual or legal support.

New Orleans, Louisiana, this 28th day of October, 2015.

_____
 UNITED STATES DISTRICT JUDGE